**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

BRENDA S. WHITE                                                                                              PLAINTIFF

V.                                          NO. 4:04CV00943-JTR

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                                   DEFENDANT

**MEMORANDUM AND ORDER**

Plaintiff, Brenda White, has appealed the final decision of the Commissioner denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI'). Both parties have submitted Appeal Briefs (docket entries #11 and #12), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108, F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however,

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

"merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On August 19, 2002, Plaintiff protectively filed applications for DIB (Tr. 67-69) and SSI (Tr. 302-304), alleging an onset of disability of February 2, 1999 (Tr. 63), due to diabetes, chronic asthma,[2] poor eyesight and cataracts, headaches, neck, shoulder, and back pain, blackout spells, and tinnitus (Tr. 104). During the administrative hearing, Plaintiff testified that she had two additional medical problems that also contributed to her being disabled: (1) a "spastic colon" that caused chronic diarrhea (Tr. 346); and (2) emotional problems for which she was receiving treatment at Counseling Associates.[3]  (Tr. 351-352.)

Plaintiff was 51 years old at the time of the administrative hearing (Tr. 338), had gone through the 8th grade in school, and later received her GED. (Tr. 259, 338.) Plaintiff's past relevant work included jobs as a home health aide and as trimmer in a poultry processing plant. (Tr. 89-91)

The Administrative Law Judge ("ALJ") considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i) (2004). If the claimant is, benefits are denied; if not, the evaluation goes to the next step. *Id.*

Step 2 involves a determination, based solely on the medical evidence, of whether the

---

[2] Plaintiff later explained, "My asthma doesn't cause me constant trouble anymore. [It] just flairs up now and then and I get bronchitis [each winter]." (Tr. 111).

[3] Plaintiff testified that these emotional problems made it difficult or impossible for her to be around other people. (Tr. 351-352.)

claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.,* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id.*

If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. *Id.*, § 404.1520(e). This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(a)(4)(v), 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

In his decision, dated April 15, 2004, the ALJ found that Plaintiff: (1) was insured for DIB through March 31, 2004; (2) had not engaged in substantial gainful activity; (3) had a host of "severe impairments," including diabetes mellitus, chronic back, neck, and right shoulder pain, chronic headaches, and anxiety and depression; (4) was not totally credible; (5) retained the RFC to lift and carry 10 pounds frequently and 20 pounds occasionally; stand, walk, and sit for 6 hours out of an 8-hour workday; could not perform any work activities above the shoulder using her dominant right

arm; and, due to limitations on concentration, was limited to understanding, remembering, and carrying out simple instructions, which would limit her to unskilled work activities; (6) was unable to perform any of her past relevant work; but (7) could perform a significant number of other jobs within the regional or national economy, such as sales clerk and machine tender/off-bearer.[4] (Tr. 22-23.)  Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

On May 20, 2004, Plaintiff requested the Appeals Council to review the ALJ's decision (Tr. 317-319) and, a short time later, requested the Appeals Council to receive additional medical evidence consisting of clinical notes from Counseling Associates, Inc.[5] (Tr. 326-333.)  The Appeals Council subsequently entered an Order (Tr. 7) making the Counseling Associates documents part of the record.  On July 9, 2004, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 4-6)

On September 7, 2004, Plaintiff filed her Complaint (docket entry #2), initiating this action. In Plaintiff's Appeal Brief, she argues that the ALJ erred: (1) in failing to consider her mental limitations in determining her RFC and in his hypothetical question to the vocational expert at step 5 (*Pltf.'s Appl. Br.* at 20-23); (2) in failing to properly determine her "physical" RFC (*Pltf.'s App. Br.* at 23-25); (3) in failing to expressly evaluate her obesity in determining her RFC (*Pltf's App. Br.* at 25-27); and (4) because page 341 of the administrative record (which describes Plaintiff's reasons for stopping work at the onset of her disability) is missing (*Pltf.'s App. Br.* at 27).  Because the Court

---

[4]In making this step 5 determination, the ALJ relied on the testimony of a vocational expert. (Tr. 358-363.)

[5]Among other things, these clinical notes reflect that:  (1) on January 7, 2004, Plaintiff had a GAF of 50; and (2) on March 25, 2004, Plaintiff was given a Global Assessment of Function ("GAF") score of 60.

concludes that Plaintiff's first argument has merit, it need not address Plaintiff's remaining arguments.

As previously discussed, in her testimony during the administrative hearing, Plaintiff stated that her "emotional problems" adversely affected her ability to work, *i.e.*, she found it difficult to be around other people. (Tr. 351-352.) The medical record is filled with references to Plaintiff suffering from depression,[6] anxiety, panic attacks, and a need to isolate herself from others. (Tr. 255; 257-260; 269.) During 2003 and 2004, Plaintiff sought regular mental health counseling at Counseling Associates. Those clinical notes reflect that Plaintiff: (1) suffered from depression (Tr. 297), hallucinations (Tr. 291), panic attacks (Tr., 288, 291, 295), and a secondary diagnosis of PTSD (*id.*); (2) had problems with flat effect and isolated herself from others (Tr. 288, 290); and (3) had GAF scores of 48, 60, and 50 . (Tr. 260, 288, 327, 333.)

Consistent with Plaintiff's testimony and the supporting medical evidence, the ALJ found that Plaintiff's anxiety and depression "are 'severe' impairments." (Tr. 15.) However, in determining her RFC, the ALJ failed to evaluate Plaintiff's mental impairments in accordance with the special technique outlined in 20 C.F.R. § 404.1520(a).[7] Instead, without any analysis or explanation, the ALJ made a conclusory finding that, "from a mental standpoint, she [Plaintiff] has limitations of concentration at times to the extent that she is limited to understanding, remembering,

---

[6]One of Plaintiff's treating physicians, Dr. Sandberg, prescribed Prozac. However, while taking this antidepressant, Plaintiff continued to have problems with depression. (Tr. 257-260.)

[7]Under this regulation, the ALJ must specifically analyze the extent to which Plaintiff's mental impairments affect her ability to work. In conducting this analysis, the ALJ is required to rate the degree of functional loss from the impairment in the four areas of function essential to work: activities of daily living; social functioning; concentration, persistence or pace; and deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(b)(3).

and carrying out simple instructions, which would limit her to unskilled work activity." The ALJ's failure to follow the special technique for analyzing Plaintiff's mental limitations in arriving at her RFC constitutes reversible error.

On remand, the ALJ is directed to carefully assess the severity of Plaintiff's mental impairments in accordance with the special techniques set forth in 20 C.F.R. § 404.1520(a). If necessary, the ALJ should also seek the assistance of a mental health specialist in determining Plaintiff's mental RFC.[8] Finally, one of Plaintiff's treating physicians, Dr. David Oberlander, a neurologist, expressed the unequivocal opinion that Plaintiff is "disabled from the neurological standpoint." (Tr. 250.) While the ALJ certainly is not obligated to uncritically accept that opinion, on remand he should seek clarification of the specific medical evidence supporting Dr. Oberlander's opinion.

IT IS THEREFORE ORDERED THAT the Commissioner's decision is reversed and remanded. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405 (g) and *Melkonyan v. Sullivan,* 501 U.S. 89 (1991).

DATED this 13th day of December, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

---

[8] While Plaintiff correctly points out that the ALJ also failed to evaluate her obesity in arriving at her RFC, this was not error. The medical evidence supports Plaintiff's claim that she is obese, but there is nothing in the record that suggests her obesity in any way interferes with or limits her ability to work.